Stokes vs. Warren.

CASE 87—PETITION ORDINARY—MAY 25.

# Stokes vs. Warren.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1.                                        "LOUISVILLE, June 29, 1866.

I have this day deposited with C. N. Warren & Co. ten thousand dollars in American gold coin, and received fifteen thousand dollars in currency, and, on demand, I am to have returned to my order ten thousand dollars in American gold coin, by the payment of fifteen thousand dollars in currency. Witness our hands.

"W. H. STOKES,
"C. N. WARREN."

*Held by the court*—That, under the foregoing agreement, the title to the gold and currency passed, and each had a right to use what he received as he might see proper. That Warren, by express stipulation, undertook to return the same amount in American gold coin on Stokes' demand, and is liable on Stokes' return of the currency and demand, provided such return and demand be made within a reasonable time and under reasonable circumstances. But that Stokes, however, made no express stipulation to return the currency on Warren's demand, and is not liable to Warren for refusing his demand. Judgment of lower court in favor of Warren *reversed*. (*Turner vs. Johnson*, 7 *Dana*, 435; *Hicks vs. Shouse*, 17 *B. Mon.*, 483.)

2. The written memorial is the highest evidence of the contract; and, in the absence of any averment that part is left out by mistake or fraud, is presumed to contain the whole contract. (*See Greenleaf on Ev.*, secs. 275, 276, 278, *and* 279, *and Parsons on Contracts, vol.* 2, *sec.* 10, *note t, and s. p.* 61.)

BULLOCK & ANDERSON,                              For Appellant,

CITED

*Greenleaf's Ev.*, secs. 275 to 279.
2 *Parsons on Contracts, sec.* 10, *note t, s. page* 61.
*Ib., pp.* 76, 77, 27, 28.

Stokes vs. Warren.

8 *Shepherd*, 484 ; *Warren vs. Wheeler.*

7 *Dana*, 435 ; *Turner vs. Johnson.*

17 *B. Mon.*, 483 ; *Hicks vs. Shouse.*

2 *Am. Law Rg., p.* 129, *et seq.*

14 *B. Mon.*, 554 ; *Martin vs. McDonald.*

1 *Met.*, 237 ; *Mitchell vs. Mattingly.*

5 *Littell*, 335 ; *Chambers vs. George.*

3 *Mon.*, 166 ; *McCord vs. Ford, &c.*

3 *Littell*, 243 ; *Anderson vs. Ewing.*

9 *Ind.*, 514 ; *Connell vs. Pumphrey.*

1 *Blackf.*, 233 ; *Osborne vs. Fulton.*

1 *Blackf.*, 350 ; *Fischli vs. Cowan.*

2 *Duvall*, 29 ; *Griswold vs. Hepburn.*

W. R. THOMPSON and

I. & J. CALDWELL, For Appellee,

CITED—

2 *Parsons on Contracts, pp.* 27, 173, 174.

5 *Mon.*, 9 ; *Haggin vs. Williamson.*

17 *B. Mon.*, 486 ; *Hicks vs. Shouse.*

1 *Met.*, 438 ; *Woodcock vs. Farrell.*

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The important question in this case is as to the proper construction of the following contract :

" LOUISVILLE, June 29, 1866.

" I have this day deposited with C. N. Warren & Co. ten thousand dollars in American gold coin, and received fifteen thousand dollars in currency, and, on demand, I am to have returned to my order ten thousand dollars in American gold coin by the payment of fifteen thousand dollars in currency. Witness our hands.

" W. H. STOKES,

" C. N. WARREN."

Warren tendered back the gold and demanded the currency, which, being refused by Stokes, he brought suit for its recovery. The court gave judgment against him for the fifteen thousand dollars. This was erroneous in any view of the case; for, since the decision of a majority of this court in *Griswold vs. Hepburn*, 2 *Duvall*, 29, gold and silver coin alone must be regarded as a legal tender in this State, until otherwise authoritatively settled by the Supreme Court of the United States. The currency, therefore, should have been reduced to its value in gold at the time of rendering the judgment, and only this amount adjudged.

But the radical error insisted upon is, that Stokes is, in no event, liable to return the currency and accept the gold, only at his own option. In other words, he insists that it was, substantially, a sale of the gold to Warren, with the right reserved, on his part, at any time he should desire, to repurchase the gold at the same rates; whilst Warren insists that it was not a sale, but an exchange of the use of the one amount and kind for the use of the other amount and kind, and that either party had the right to terminate this contract by a tender of the amount and kind received by him to the other.

The question is not free from embarrassment; still, we think that the understanding and agreement of the parties can be ascertained by the written instrument.

There is no averment that any part of the agreement was left out of the written memorial by fraud or mistake. Had the written contract not contained the stipulation, " *on demand, I am to have returned to my order ten thousand dollars in American gold coin by the payment of fifteen thousand dollars in currency,*" it would simply have been a deposit by the one party of ten thousand dollars in gold and a withdrawal from the other of fifteen thousand dol-

lars in currency, and each party would have been indebted to the other the specific sum in kind obtained from him; and the rights and obligations would have been mutual in each party to return the amount and kind obtained by him, and demand of the other the amount in kind received; but this stipulation, if it means anything, evidences that Stokes was negotiating and bargaining for a special, peculiar, and exclusive privilege, not pertaining to the other party. But for this peculiar stipulation, the law would have implied mutual rights and duties; but with a specific and express right in the one stipulated for, and no such right in the other expressly covenanted for, the law can only imply what the language imports—that the parties agreed, that, at that time, ten thousand dollars in gold and fifteen thousand dollars in currency were equivalents; but a part of this contract that one party should have the right, in future, to return the currency and demand the gold. In other words, it was the hazard of an opinion whether gold, as a commodity of commerce, would advance or fall in value. Warren, being so confident that it would fall rather than rise, that he was willing to stipulate, as part of the contract, to return, in future, the same amount in gold for the specified sum in currency.

The written memorial is the highest evidence of the contract, and, in the absence of any averment that part is left out by mistake or fraud, is presumed to contain the whole contract; and this substantially comports with all the authorities. (*See Greenleaf's Ev.*, secs. 275, 276, 278, 279; *Parsons on Contracts*, 2d vol., sec. 10, *note t, and s. p. 61.*)

The title to the gold coin passed to Warren, and he had the absolute right to dispose of or use it as he might see proper. So the title to the currency, with the right o use it at his own option, passed to Stokes.

Stokes vs. Warren.

Warren, by express stipulation, undertook to return the same amount in American gold coin, but not this identical coin, on Stokes's demand. Stokes, however, made no express stipulation to return the currency on Warren's demand. Warren undertook a personal obligation, in express and direct terms. Stokes made no such covenant in express terms. Does the law imply one on his part?

That gold coin had, during the late war, become a commodity of commerce rather than the legal standard by which all other commodities were measured, has been so often, in various phases, before this court, and so notorious as part of the accredited history of the war and country, as now to be judicially known to this court.

These principles, and this construction of this contract, are harmonious with the previous decisions of this court in *Turner vs. Johnson*, 7 *Dana*, 435, *and Hicks vs. Shouse*, 17 *B. Monroe*, 483 ; and, according to the latter, as well as other decisions, Stokes would be barred, after an unreasonable delay, from demanding a performance of the stipulation by Warren to return him ten thousand dollars in gold coin for fifteen thousand dollars of currency, on his demand.

Stokes must demand the performance of this stipulation within reasonable time and under reasonable circumstances. He cannot take his whole life-time in which to make it; nor, indeed, do we think he can, after the termination of this suit, make it at all.

The judgment is reversed, with directions for further proceedings in accordance with this opinion.