**Michael J. BARBER, Appellant,**

v.

**NATIONAL BANK OF ALASKA and Diania Wallace, Appellees.**

No. S–3736.

Supreme Court of Alaska.

July 26, 1991.

David Rankine, Law Offices of William L. McNall, Anchorage, for appellant.

LeRoy E. DeVeaux, DeVeaux and Associates, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This case concerns events surrounding the National Bank of Alaska's (NBA) foreclosure of Michael Barber's duplex property. Barber appeals the superior court's grant of partial summary judgment and directed verdict. The superior court dismissed by summary judgment Barber's claims under the federal Fair Debt Collection Practices Act[1] and the Alaska Unfair Trade and Consumer Practices Act.[2] The superior court granted NBA's motion for a directed verdict on Barber's claims of general negligence, misrepresentation, breach of covenants of good faith and fair dealing, and punitive damages. NBA received $30,000 in attorney's fees which Barber also appeals.

We affirm summary judgment on the federal and state statutory claims. We affirm as well the directed verdict on the claim of breach of implied covenants of good faith and fair dealing. We reverse and remand for trial the negligence claim, one of the misrepresentation claims, and the related punitive damage claims. We also vacate the award of attorney's fees.

## I. FACTS

NBA, the servicing agent for Alaska Housing Finance Corporation (AHFC), the mortgagee, foreclosed Barber's Anchorage residential property in 1988. When NBA sought to have Barber removed from the property, he counterclaimed alleging statutory and common law violations and also brought claims against NBA employee, Diania Wallace. Barber's claims span the entire course of his dealings with NBA from his purchase of the property in 1982 to the foreclosure in 1988.

Barber originally financed the purchase of his property in 1982 through NBA which sold the mortgage to AHFC; however, NBA continued to service the mortgage. Barber purchased the house for $138,000 at a 13.75% interest rate. Within five months of closing, Barber lost his position as a petroleum engineer on the North Slope. From that time until the foreclosure in 1988, Barber experienced lengthy periods of unemployment. As a result, he was repeatedly late in his mortgage payments. Moreover, the value of the property declined as the Anchorage housing market plummeted in the mid- to late 1980s.

In 1986, Wallace, an NBA mortgage collection employee, was assigned to Barber's account. Wallace worked closely with Barber. She suggested various strategies to enable him to keep the property, including refinancing and adjusting the interest rate. None proved successful. Barber alleges that misrepresentation and breach of implied covenants of good faith and fair dealing occurred in the course of these efforts.

Barber ceased to make mortgage payments in June 1987. To avoid foreclosure, Wallace suggested that Barber apply for refinancing to the Home Owner's Assistance Program (HOAP) through the Mort-

---

**1.** 15 U.S.C.A. §§ 1692–1692o *et seq.* (1982 & Supp.1991).

**2.** AS 45.50.471–561.

gage Guarantee Insurance Corporation.[3] Barber applied on February 18, 1988. However, as Barber was no longer making mortgage payments, NBA continued the foreclosure proceedings concurrently. Barber was aware of the dual process, but Wallace assured him that the foreclosure would be postponed while his HOAP application was pending. Wallace and Barber had a number of telephone conversations between the time Barber applied to HOAP and April 25, 1988, the date NBA had set for foreclosure.

Pursuant to the agreement with Barber, Wallace took steps to postpone the April 25 foreclosure. Believing she had postponed the sale, Wallace went on vacation several days before April 25. Her replacement failed to stop the sale which proceeded as scheduled. Wallace returned from vacation on April 25. When she subsequently learned that the sale had taken place, she postponed recordation, so that the processing of Barber's HOAP application would continue. Ultimately, Barber's application and appeal for HOAP refinancing were denied.

Wallace did not tell Barber that the foreclosure had occurred. Rather, she told him that it had been postponed until a date in May. During subsequent conversations, Barber claims Wallace stated several successive postponement dates, the last of which was June 3, 1988. Barber did not learn that the foreclosure had occurred until June 2, 1988, when his counsel contacted NBA and was informed that the foreclosure sale had indeed occurred on April 25, 1988. Barber claims that NBA and Wallace's failure to postpone the foreclosure and Wallace's subsequent misstatements concerning the foreclosure, violated the Fair Debt Collection Practices Act, the Alaska Unfair Trade and Consumer Protec-

tion Act, were negligent, and constituted negligent or knowing misrepresentation.

## II. STANDARD OF REVIEW

■ "When reviewing a grant of summary judgment, this court must determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts." *Merdes v. Underwood*, 742 P.2d 245, 248 (Alaska 1987).

■ Our standard of review for a directed verdict is to view the evidence in the light most favorable to the nonmoving party and affirm the motion only if fair-minded jurors could not reach different conclusions. *City of Delta Junction v. Mack Trucks, Inc.*, 670 P.2d 1128, 1130 (Alaska 1983).

## III. THE FAIR DEBT COLLECTION PRACTICES ACT

■ Barber appeals the grant of summary judgment on his Fair Debt Collection Practices Act[4] (the Federal Act) claim. Although the parties stipulated that NBA is not subject to the provisions of the Federal Act, Barber contends that it should be construed to include *employees* of mortgage servicers, such as Wallace. He argues that Wallace is a "debt collector" under section 1692a(6)(F) and, therefore, she must comply with its provisions.

The Federal Act was enacted to stop abusive practices in the collection of consumer debts such as threats of physical violence, use of profanity, and misrepresentation. S.Rep. No. 382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1698. The Federal Act's definition of "debt collector" does not encompass collection of mortgage debt or mortgage service companies servicing debts which were not in default when service commenced.[5] The legislative history

---

3. The HOAP program allowed financially troubled homeowners to refinance their property at lower interest rates; it was more lenient than conventional refinancing with respect to the borrower's mortgage payment history.

4. 15 U.S.C.A. § 1692 *et seq.* (1982 & Supp.1991).

5. The statutory definition of "debt collector" does not include a person who is collecting a debt due another if the collection activity "(i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement ... [or] (iii) concerns a debt which was not in default at the time it was obtained by such person...." 15 U.S.C. § 1692a(6)(F).

also states that "persons who service debts for others" are not debt collectors for purposes of the act. 1977 U.S.Code Cong. & Admin.News at 1701. Subsequent cases have found that mortgage service companies are not "debt collectors" under the Federal Act. *See, e.g., Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985).

Thus, the Federal Act was not directed at the type of debt (mortgage) nor the type of activity (debt service) at issue in this case. We therefore reject Barber's plea for a liberal construction of the statute and affirm the superior court's grant of summary judgment.

## IV. ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

■ The Alaska Unfair Trade Practices and Consumer Protection Act[6] (the Alaska Act) is the state counterpart to the Federal Act.[7] Barber contends that the mortgage NBA sold him was a "good," or alternatively, that the mortgage and the subsequent servicing arrangements were a provision of "services." Therefore, he claims that the actions of Wallace and NBA were covered by the Alaska Act.

In support of his argument that mortgage loan servicing constitutes a "service" governed by the Alaska Act, Barber cites *State of Alaska v. O'Neill Investigations, Inc.,* 609 P.2d 520 (Alaska 1980), which held that the Alaska Act applies to activities of independent debt collection agencies.

However, the *O'Neill* decision defines an independent debt collector as "a person in a business the *principal* purpose of which is the collection of debts owed or due or asserted to be owed or due." 609 P.2d at 523 n. 1 (emphasis added).[8] As NBA's principal business is not debt collection, NBA is not an independent debt collector. Therefore, *O'Neill* does not support Barber's contention that the Alaska Act is applicable to his case.

Barber's loan also is not a "good" under the Alaska Act. In *State v. First National Bank of Anchorage,* 660 P.2d 406, 413 (Alaska 1982), we held that the sale of real property is not governed by the Alaska Act. We therefore conclude as a matter of law that the Alaska Act does not apply to Barber's mortgage. Accordingly, we affirm the trial court's grant of summary judgment on this issue.

## V. THE NEGLIGENCE CLAIM

■ Barber argues that NBA/Wallace were negligent in failing to postpone the mortgage sale. In support of this argument, he cites NBA/Wallace's representations that the foreclosure would be postponed during the period in which his HOAP application was pending. Barber states that he relied on the promised postponement and on Wallace's subsequent statement that the foreclosure had been postponed until June 3, 1988, and that he incurred damages in the form of increased federal tax liability when he failed to file for bankruptcy prior to the foreclosure.[9]

---

**6.** AS 45.50.471–561.

**7.** AS 45.50.471 provides in relevant part:
(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful.
(b) The terms "unfair methods of competition" and "unfair or deceptive acts or practices" include, but are not limited to, the following acts:
    *     *     *     *     *     *
    (11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services;

(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged.

**8.** *O'Neill* also cites the Federal Act definition of "debt collector." *Id.*

**9.** The sale of an asset worth less than the outstanding debt owed on that asset, to a creditor in exchange for the creditor foregoing the portion of the loan not secured by the asset, constitutes discharge of indebtedness income which is subject to federal tax liability. One exception to

NBA acknowledges that the failure to postpone the foreclosure was caused by its employee's mistake. Further, Barber's intention to file for bankruptcy prior to the foreclosure is evidenced by the fact that he met with counsel on June 2, 1988 and, believing that the foreclosure was to occur the following day, completed the necessary papers to commence bankruptcy proceedings.

We find that Barber has presented evidence sufficient to allow a fair-minded juror to conclude that he relied to his detriment on NBA/Wallace's promise to postpone foreclosure. We therefore reverse the directed verdict with respect to the negligence claim and remand this issue for retrial.

## VI. MISREPRESENTATION CLAIMS

■ Barber alleges that NBA/Wallace made knowing or negligent misrepresentations of numerous facts, or that it failed to inform him of material facts. The elements of a cause of action for knowing misrepresentation or deceit include: a false representation of fact, scienter, intention to induce reliance, justifiable reliance, and damages. *See* Restatement (Second) of Torts § 525 (1976); *see also Thomson v. Wheeler Constr. Co.,* 385 P.2d 111, 113 (Alaska 1963).

This court first recognized the tort of negligent misrepresentation in *Howarth v. Pfeifer,* 443 P.2d 39 (Alaska 1968). Subsequent cases have found, under delineated circumstances, "a duty to provide accurate information" once one undertakes to speak. *Bevins v. Ballard,* 655 P.2d 757 (Alaska 1982); *see also Transamerica Title Insurance Co. v. Ramsey,* 507 P.2d 492 (Alaska 1973). In determining whether a duty to "speak carefully" exists, the *Bevins* decision lays out the following test:

(a) whether the defendant had knowledge, or its equivalent, that the information was desired for a serious purpose

and that the plaintiff intended to rely upon it;

(b) the foreseeability of harm;

(c) the degree of certainty that plaintiff would suffer harm;

(d) the directness of causation; and

(e) the policy of preventing future harm.

655 P.2d at 760.

We apply these tests to determine whether Barber has alleged facts sufficient to allow a fair-minded juror to find knowing or negligent misrepresentation regarding each of the following claimed misrepresentations: (1) the postponement of the foreclosure sale; (2) Barber's ability to qualify for refinancing; (3) the possibility of loan modification; (4) the likelihood that, if foreclosure occurred, it would be a judicial foreclosure; and (5) the likelihood that the foreclosure process would be completed in November 1987.

■ Claim 1: Barber alleges that Wallace repeatedly represented that the foreclosure sale had been postponed when it had not. Barber's contacts with NBA during this period are documented. Thus, Barber has alleged facts under which a reasonable juror could conclude that Wallace knew the foreclosure had occurred but deliberately represented that it had been postponed. Moreover, it could be reasonably concluded that Wallace intended to cause Barber to rely on the false information, or that she should have known that he would rely on the information to his detriment.

Barber alleged that, due to this misrepresentation, he incurred damages in the form of increased federal tax liability.[10] The superior court ordered a directed verdict on this claim reasoning that the alleged damages, i.e., the increased federal tax liability, occurred after the foreclosure of April 25 and, therefore, any misrepresentation concerning the foreclosure could not be causally linked to the damages. We disagree. Barber states that he contacted NBA the

imposition of tax liability occurs when the debtor has commenced a proceeding under the Bankruptcy Code and discharges the debt during the course of the proceeding. 26 U.S.C. § 108(a) (1988). Therefore, tax liability on the discharge of indebtedness income resulting

from the foreclosure sale of Barber's property may have been avoided had Barber filed for bankruptcy prior to the foreclosure.

**10.** *See supra* note 9.

very day the foreclosure took place and was assured that the foreclosure had been postponed. Had Barber been informed on April 25 that the postponement had not been achieved, his attorney may have been able to pursue other remedies. We remand this issue for proceedings in accordance with this opinion.[11]

■ Claim 2: Barber claims that NBA misrepresented that he could qualify for refinancing. One such misrepresentation allegedly occurred at closing when "[t]he loan closer [sic] assured ... [Barber] that he could refinance at a later date." However, Barber does not provide sufficient details of this transaction to support a misrepresentation claim. Moreover, even if Barber had demonstrated reliance on this alleged assurance, he has failed to show a causal link between the assurance and his alleged damages, his subsequent failure to qualify for refinancing.

■ Claim 3: Barber alleges that NBA misrepresented to him that his interest rate could be modified. Barber testified that, in July 1986, NBA suggested that he attempt to modify the interest rate of his existing loan. However, after being informed that "no one in the State of Alaska had ever ... had their mortgage loan modified," he decided not to apply for a rate modification. Thus, Barber fails to allege either reliance or harm; he voluntarily decided not to apply when informed of the unlikelihood of success.

■ Claim 4: Barber alleges that NBA/Wallace misrepresented to him that it would most likely judicially foreclose on his property when it was aware that a nonjudicial foreclosure was actually more likely.[12] Again, however, Barber has failed to allege that he took any action in reliance on

this information or that he suffered any harm as result of it.

■ Claim 5: Barber lastly alleges that NBA's correspondence and Wallace's telephone communications misrepresented that Barber would be required to vacate the property by November 1987. Barber states that he relied on this information and, in August, he gave notice to his tenants who immediately vacated the property. The property remained vacant from August through the date of the foreclosure. Barber claims NBA/Wallace's projection that the foreclosure would occur in November caused him to lose rental income between the date the tenants vacated the property and the date the foreclosure actually occurred. However, the NBA correspondence which Barber claims supports his assertion does not specify a date on which he was to vacate the property. At trial, Wallace was not asked whether she had given Barber a November moving date. We conclude that Barber has not set forth sufficient evidence in the record to substantiate his claim.

For the reasons discussed above, we reverse the directed verdict against Barber's misrepresentation claims only as to NBA/Wallace's misrepresentation concerning the postponement of the foreclosure. We remand that issue for retrial. We affirm the directed verdict with respect to the misrepresentation claims (2) through (5) inclusive.[13]

## VII. BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

■ Barber argues that he entered into a contract with NBA for a loan which obligated him to pay NBA various fees and costs, and which contained implied cove-

---

**11.** On remand, Barber will have to establish damages with "reasonable certainty." *Alaska Ins. Co. v. Movin' on Constr. Inc.*, 718 P.2d 472, 474 (Alaska 1986).

**12.** A judicial foreclosure would enable the lien holder to recover any deficiency between the sale price of Barber's property and the outstanding loan balance. *See* AS 09.45.170; *see also Conrad v. Counsellors Inv. Co.*, 751 P.2d 10 (Alaska 1988).

**13.** In light of this determination as well as our conclusion that Barber has made a sufficient factual showing to allow a finding of knowing or negligent misrepresentation with respect to his first claim, we decline to address Barber's argument that the tort of innocent misrepresentation is applicable to the alleged acts.

nants of good faith and fair dealing. He asserts that NBA and Wallace breached these covenants by directing him to seek refinancing for which they knew he did not qualify. The superior court rejected this argument on the ground that the Barber's contract was with AHFC not NBA. The record supports the superior court's finding. Furthermore, even if the servicing arrangement constituted a contractual relationship between NBA and Barber, Barber does not allege sufficient facts to show a breach of contract with respect to NBA's servicing of the loan. On the contrary, Barber's testimony reveals that Wallace/NBA made repeated efforts to assist him when his payments were late. We therefore conclude that reasonable jurors could not find that NBA or Wallace had breached an implied covenant of good faith and fair dealing. Accordingly, we affirm the directed verdict on this issue.

## VIII. PUNITIVE DAMAGES

The trial court's directed verdict on punitive damages resulted from its directed verdict on the claims of negligence, misrepresentation, and breach of implied covenants of good faith and fair dealing. We affirm the superior court's ruling that punitive damages could not be awarded on Barber's claim for breach of implied covenants of good faith and fair dealing. However, because we reverse and remand Barber's claims of negligence and negligent or knowing misrepresentation with respect to postponement of the foreclosure, the issue of punitive damages as to these claims must likewise be reconsidered on remand.[14]

■ To recover punitive damages, the "plaintiff must prove that the wrongdoer's conduct was 'outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of another.' Actual malice need not be proved. Rather, '[r]eckless indifference to the rights of others, and conscious action in deliberate disregard of them ... may provide the necessary state of mind to justify punitive damages.' "[15] Sturm, Ruger & Co., Inc. v. Day, 594 P.2d 38, 46 (Alaska 1979) (quoting Restatement (Second) of Torts § 908 (Tent. Draft No. 19, 1973)), modified, 615 P.2d 621 (Alaska 1980), cert. denied, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981), overruled on other grounds, Dura Corp. v. Harned, 703 P.2d 396 (Alaska 1985); accord Great Western Sav. Bank v. George W. Easley Co., J.V., 778 P.2d 569 (Alaska 1989); Lee Houston & Associates, Ltd. v. Racine, 806 P.2d 848 (Alaska 1991). Punitive damages require proof by clear and convincing evidence. AS 09.17.020.

■ In previous decisions, we have adopted the view that "[t]he purpose of punitive damages is twofold: to punish the wrongdoer and to deter the wrongdoer and others like him from repeating the offensive act." Providence Washington Ins. v. City of Valdez, 684 P.2d 861, 863 (Alaska 1984). Thus, we have found punitive damages to be appropriate in cases where the actual losses are nominal.[16]

Regarding damages for Barber's misrepresentation claim, we direct the superior court to consider the public policy implications of the conduct at issue. Foreclosure of residential property is fraught with financial repercussions for the individuals involved. Financial institutions must handle such dealings in a scrupulous fashion taking care to disclose and explain all relevant matters to the parties.

## IX. ATTORNEY'S FEES

■ Barber argues that, had he prevailed, his recovery for attorney's fees

---

14. This court has upheld punitive damage awards for negligent misrepresentation in Clary Ins. Agency v. Doyle, 620 P.2d 194 (Alaska 1980), and knowing misrepresentation in Alaska Ins. Co. v. Movin' on Constr. Inc., 718 P.2d 472 (Alaska 1986).

15. NBA contends that no facts are alleged which could establish the required scienter. We disagree. Barber alleges that Wallace told him on several occasions that the foreclosure sale had

been postponed until June 3 even though she knew that the sale had already taken place.

16. In Oaksmith v. Brusich, 774 P.2d 191, 201 (Alaska 1989), this court reiterated its earlier holding that "in some cases substantial punitive damages may be awarded even though actual losses have not been proven with sufficient definiteness to support other than nominal damages." (citing Haskins v. Shelden, 558 P.2d 487, 493 (Alaska 1976)).

would have been limited to $6000 pursuant to Alaska Rule of Civil Procedure 82. He contends that the award of $30,000 in attorney's fees to NBA/Wallace violates the Equal Protection Clause of the Alaska Constitution.[17] We reject this argument. Rule 82 gives the superior court discretion to fix attorney's fees in a reasonable amount when no monetary recovery is had. We find that the superior court did not abuse its discretion when it awarded attorney's fees to NBA/Wallace as the prevailing party.[18]

Notwithstanding this determination, we vacate the award of attorney's fees and remand the question to the superior court for redetermination after a trial of these remaining issues.

AFFIRMED in part, REVERSED in part, VACATED in part and REMANDED.

---

**17.** NBA's counsel submitted records indicating that it incurred actual attorney's fees of $50,028.

**18.** The purpose of allowing the prevailing party to obtain fees is to partially compensate the party for the costs incurred in litigation. *City of Valdez v. Valdez Dev. Co.,* 523 P.2d 177 (Alaska

1974). This court will interfere with an award of such fees only when discretion has been abused; abuse of discretion is shown when the trial court's determination is manifestly unreasonable. *Palfy v. Rice,* 473 P.2d 606 (Alaska 1970).