NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| LEO BLAS, ) | Supreme Court No. S-16174 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-14-04595 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| BANK OF AMERICA, N.A., ) | AND JUDGMENT* |
| ) | |
| Appellee. ) | No. 1625 – April 12, 2017 |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Leo Blas, pro se, Chugiak, Appellant. Nelson G. Page, Burr, Pease & Kurtz, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.    INTRODUCTION

A homeowner filed suit to bar a bank's attempt to non-judicially foreclose after he defaulted on his home loan payments. He argued a number of deficiencies prevented a foreclosure sale, including improper authority, notice, and procedure. After rejecting the homeowner's second amended complaint the superior court granted summary judgment in the bank's favor and dismissed the homeowner's suit. The homeowner appeals. Because the homeowner's arguments are without merit, we affirm.

---

\*    Entered under Alaska Appellate Rule 214.

## II. FACTS AND PROCEEDINGS

### A. Facts

In February 2008 Leo Blas obtained a $300,000 adjustable rate 30-year loan secured by a deed of trust to his home. The deed of trust identified Bank of America, N.A. as the lender and beneficiary, and PRLAP, Inc. as the trustee. In March the Federal National Mortgage Association (Fannie Mae) "became the investor on [Blas's] loan . . . and remains the investor." Fannie Mae servicing guidelines explain that although "Fannie Mae is at all times the owner of [its] mortgage note[s]," servicers may be given temporary "possession of the mortgage note[s] whenever the servicer, acting in its own name, represents Fannie Mae's interests in foreclosure actions." Bank of America has been and remains the servicer on Blas's note and deed of trust.

In 2010 Blas defaulted on his loan. That November Bank of America assigned its interest in the deed of trust to BAC Home Loans Servicing, LP, and in December BAC Home Loans Servicing, LP replaced PRLAP, Inc. with ReconTrust Company as the successor trustee. After being served with a notice of default and intent to foreclose Blas filed a lawsuit to prevent foreclosure.

Bank of America regained its interest in the deed of trust in July 2011 as the "successor-by-merger to BAC Home Loans Servicing, Inc." Blas later reached a modification agreement with Bank of America, changing his terms to a $297,887 40-year loan with the first payment due November 1. ReconTrust terminated the non-judicial foreclosure proceedings, and the parties jointly dismissed Blas's lawsuit in February 2012 pursuant to a confidential settlement agreement.

Blas defaulted on his loan a second time; his last payment was made October 30, 2012. Bank of America replaced ReconTrust with Regional Trustee Services Corporation as the successor trustee in November 2013. Regional Trustee

Services recorded a notice of default on December 11.[1] Blas was personally served with the notice of default on December 24. Although a trustee sale originally was scheduled for March 14, 2014, the property has not been sold.

## B. Proceedings

Blas — self-represented — filed a second lawsuit against Bank of America in January 2014 and amended his complaint in March. Although Blas listed Regional Trustee Services as a co-defendant in his first amended complaint, no evidence suggests that it ever was served a summons, and it never participated in the litigation. Blas's first amended complaint primarily sought to prevent the purportedly illegal foreclosure, alleging that neither Bank of America nor Regional Trustee Services had the authority to initiate foreclosure proceedings. Blas also sought $200,000 in "compensatory and punitive damages" for harassment and expenses related to the two foreclosure attempts, as well as damages for intentional infliction of emotional distress, and suggested that his suit could become a class action.

After Blas amended his complaint the parties filed a number of motions, including summary judgment motions by both parties and three attempts by Blas to amend his complaint a second time. The superior court ultimately denied Blas's motions to accept his second amended complaint and dismissed all of Blas's claims against Bank of America on summary judgment. Blas — still self-represented — appeals.

## III. STANDARD OF REVIEW

"[W]e review a superior court's denial of a motion to amend a complaint for abuse of discretion."[2] "[I]t is within a trial court's discretion to deny such a motion

---

[1] The notice stated: "There is presently due and owing the principal balance of $273,095.99, plus interest, late charges, costs and any future advances."

[2] *Bush v. Elkins*, 342 P.3d 1245, 1251 (Alaska 2015) (quoting *Krause v.*
(continued...)

-3- *1625*

where amendment would be futile because it advances a claim or defense that is legally insufficient on its face."[3] "We consider with independent judgment whether a proposed amended complaint could survive dismissal; if we conclude that it could not, we will hold that the superior court did not abuse its discretion by denying the motion for leave to amend."[4]

"We review a grant of summary judgment 'de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law.' "[5] "We are not bound by the reasoning of the trial court and can instead affirm a grant of summary judgment on alternative grounds."[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Rejecting Blas's Second Amended Complaint.

Blas appears to argue that the superior court abused its discretion by not accepting his "timely filed second amended complaint." Bearing in mind that we generally "consider pro se pleadings liberally in an effort to determine what legal claims

---

[2]  (...continued)
*Matanuska-Susitna Borough*, 229 P.3d 168, 174 (Alaska 2010)); *see also Lingley v. Alaska Airlines, Inc.*, 373 P.3d 506, 511 (Alaska 2016).

[3]  *Bush*, 342 P.3d at 1251 (quoting *Krause*, 229 P.3d at 174).

[4]  *Id.* (quoting *Krause*, 229 P.3d at 177).

[5]  *Olson v. City of Hooper Bay*, 251 P.3d 1024, 1030 (Alaska 2011) (quoting *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008)).

[6]  *James v. McCombs*, 936 P.2d 520, 523 n.2 (Alaska 1997) (citing *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992)); *see also Seybert v. Alsworth*, 367 P.3d 32, 36 (Alaska 2016) ("We review summary judgment rulings de novo and may affirm summary judgment on any basis appearing in the record." (quoting *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010))).

have been raised,"[7] we will decide whether the superior court abused its discretion when it rejected Blas's second amended complaint.

Blas's first amended complaint expanded on his initial complaint but proved confusing for the superior court. The 12-page first amended complaint has no numbered paragraphs, identifiable causes of action, or clearly cited legal authority relevant to a non-judicial deed of trust foreclosure, and is generally hard to decipher. It took the superior court three rounds of briefing to identify 16 causes of action in the first amended complaint and eventually dismiss all of Blas's claims.

After a round of summary judgment briefing the superior court dismissed some of Blas's claims, but provided him the opportunity to "add, subtract, or modify any language within the current Complaint . . . by filing a Second Amended Complaint" to avoid the dismissal of others. Blas responded by filing a second amended complaint in February 2015. On March 5 the court also issued a routine pretrial order giving Blas 30 days to "Amend Pleadings . . . without Motion." In response Blas filed another second amended complaint, this time "per [the court's] March 5, 2015 RPO."

Both of these proposed second amended complaints were as difficult to decipher as the first amended complaint. The superior court found Blas's motion to accept his initial second amended complaint moot in light of his later submission and rejected the latest version without prejudice, stating that "[i]f [Blas] still wants to lodge a Second Amended Complaint, [he] shall comply with Civil Rules 8(a) and 10(b)."[8]

---

[7] *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012) (citing *Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1150 (Alaska 2009)).

[8] *See* Alaska R. Civ. P. 8(a) (requiring that complaints "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"); Alaska R. Civ. P. 10(b) ("All averments of claim or defense shall be made in numbered (continued...)

Blas filed a second amended complaint for a third time. Although in this third iteration Blas had numbered the majority of his paragraphs in compliance with Rule 10 and added numbered "Cause[s]," the substance remained largely identical to what had already been rejected.

The superior court rejected this third and final attempt to file a second amended complaint. Relying on *Bush v. Elkins*,[9] the superior court determined that accepting Blas's "Second Amended Complaint would unduly delay resolving this case." Because: (1) it "would not help the [c]ourt decide the issue of standing";[10] (2) "the [c]ourt [could not] determine the factual bases for the vast majority of [Blas's] causes of action"; and (3) accepting it would only force the court to "repeat the same process" of attempting to "fully comprehend" Blas's arguments, the court for a third time rejected Blas's second amended complaint.

We conclude that the superior court did not abuse its discretion by rejecting Blas's second amended complaint. We agree with the superior court that allowing Blas's

---

[8] (...continued) paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances . . . .").

[9] 342 P.3d 1245, 1252 (Alaska 2015) (recognizing amended complaints may be rejected for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" (quoting *Miller v. Safeway, Inc.*, 102 P.3d 282, 294 (Alaska 2004))).

[10] Although Blas had frequently argued that Bank of America did not have standing, the more accurate question was whether Bank of America had the "authority" to bring a non-judicial foreclosure action. *See Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 9 n.27 (Alaska 2014) ("The Espelands consistently use the word 'standing,' but as standing relates only to judicial foreclosures, we will assume they mean 'authority' to conduct the non-judicial foreclosure.").

pleading would have caused undue delay. Blas filed his lawsuit about three months before the foreclosure sale was initially scheduled, he amended his complaint shortly after the scheduled sale date, and over a year later he made his third attempt at filing a second amended complaint. Because Blas's second amended complaint: (1) "would not [have] help[ed] the [c]ourt decide" whether Bank of America had the authority to non-judicially foreclose on his property; (2) "would not have survived a motion for summary judgment" because he did not identify the factual bases for his claims;[11] and (3) did not "cure deficiencies" in his filing,[12] we affirm the superior court's rejection of Blas's second amended complaint.[13]

## B. The Superior Court Did Not Err By Dismissing Blas's Fair Debt Collection Practices Act Claim.

Citing our recent *Alaska Trustee, LLC v. Ambridge*[14] decision, Blas argues that the superior court erred by ruling that the Fair Debt Collection Practices Act[15] (FDCPA) does not apply to non-judicial foreclosures. He also argues that the notice of default sent by Regional Trustee Services violates the FDCPA. But because the FDCPA

---

[11] *Bush*, 342 P.3d at 1252 (citing *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 177 (Alaska 2010)).

[12] *Id.* (quoting *Miller*, 102 P.3d at 294).

[13] Because we affirm on this point we do not consider Blas's claims raised only in his second amended complaint, including alleged violations under AS 34.20.060, AS 34.20.080(e), AS 34.20.110, AS 34.20.115, AS 34.20.120 and the Uniform Commercial Code.

[14] 372 P.3d 207, 222 (Alaska 2016) ("The superior court was correct in ruling that Alaska Trustee, through its processing of nonjudicial foreclosures, is . . . a 'debt collector' as defined by § 1692(a)(6)[] and is subject to the broader provisions of the FDCPA.").

[15] 15 U.S.C. §§ 1692-1692p (2012).

does not apply to Bank of America in this context and because Regional Trustee Services is not a party, we conclude the superior court did not err by dismissing Blas's FDCPA claim.

### 1. The FDCPA does not apply to Bank of America in this context.

In *Ambridge* we held that nonjudicial foreclosures fall within the full purview of the FDCPA.[16] We concluded that "[d]etermining individual liability under the FDCPA . . . [requires] a two-step analysis[:] . . . '1) whether the individual qualifies as a debt collector, and 2) whether that individual has taken an action that violates the FDCPA.' "[17]

The record clearly demonstrates that Regional Trustee Services — not Bank of America — sent Blas the notice of default that purportedly failed to comply with the FDCPA. We have long held that the FDCPA "does not encompass . . . mortgage service companies" like Bank of America,[18] and our *Ambridge* holding does not expand the definition of "debt collector" to include mortgage service companies.[19] Bank of America is not a "debt collector" as defined by the FDCPA because Bank of America did not send mail to "collect[] or attempt[] to collect, directly or indirectly, debts owed" by Blas, and

---

[16] 372 P.3d at 222.

[17] *Id.* at 222-23 (quoting *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 1000 (9th Cir. 2012)).

[18] *Barber v. Nat'l Bank of Alaska*, 815 P.2d 857, 860 (Alaska 1991) ("The [FDCPA's] definition of 'debt collector' does not encompass . . . mortgage service companies servicing debts which were not in default when service commenced." (citing 15 U.S.C. § 1692a(6)(F))).

[19] *Ambridge*, 372 P.3d at 222 n.88 (noting that mortgage service companies are "clearly excluded from the [FDCPA's] definition of 'debt collector.' " (quoting 15 U.S.C. § 1692a(6)(F)) (citing *Barber*, 815 P.2d at 860-61).

it falls within the exemptions listed in 15 U.S.C. § 1692a(6)(F).[20]  Although the superior court reached this decision by stating that the FDCPA "does not apply to claims involving foreclosures," we "may affirm summary judgment on any basis appearing in the record."[21]  Because the FDCPA does not apply to Bank of America we conclude that the superior court did not err by dismissing Blas's FDCPA claim against it.

### 2.     Regional Trustee Services was not a party to this case.

Blas's initial complaint listed Bank of America as the sole defendant. Blas's first amended complaint listed both Bank of America and "Regional Trustee Services Corp." as defendants.  But there is no evidence that Blas ever served Regional Trustee Services a summons.[22]  Regional Trustee Services was not involved in the superior court litigation, and no attorney entered an appearance representing Regional Trustee Services.  All three second amended complaints Blas attempted to file listed Bank of America as the sole defendant, and Blas conceded at oral argument before us that Regional Trustee Services is not a party.  Because Regional Trustee Services was not a party in this litigation we do not need to address whether its notice of default violated the FDCPA.

---

[20]     *Id.* at 223 (quoting 15 U.S.C. § 1692a(6)); *see also Barber*, 815 P.2d at 861.

At oral argument on appeal Blas argued under an agency theory that Bank of America is subject to the FDCPA through Regional Trustee Services' actions.  But Blas cited no authority and has not convinced us that Bank of America meets the definition of "debt collector" under the FDCPA on this theory.  *See* 15 U.S.C. § 1692a(6)(F).

[21]     *Seybert v. Alsworth*, 367 P.3d 32, 36 (Alaska 2016) (quoting *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010)).

[22]     *See* Alaska R. Civ. P. 4(a) (requiring plaintiff to serve a "summons and a copy of the complaint" on defendant).

## C. The Superior Court Did Not Err By Dismissing Blas's Remaining Claims.

### 1. Bank of America has authority to foreclose on Blas's property.

Blas argues that Bank of America does not have authority to foreclose on his home because Fannie Mae is his loan's "investor[] or owner" and Bank of America is only the "servicer." But Bank of America does have authority to direct a trustee to bring a non-judicial foreclosure action even though Bank of America no longer owns Blas's loan. Fannie Mae's servicing guidelines explicitly give servicers the authority to act in their own name and "represent[] Fannie Mae's interests in foreclosure actions." Alaska law permits such arrangements.[23] The superior court did not err by finding that Bank of America has authority to bring the foreclosure action against Blas.

Citing an inapplicable trust statute,[24] Blas contends that Bank of America is neither a beneficiary on his deed of trust nor acting as a beneficiary should. But Bank of America is explicitly listed as the beneficiary of his deed of trust, and it is permitted to act on Fannie Mae's behalf in this context.[25] Blas also claims that Bank of America needs to produce the mortgage note to bring a non-judicial foreclosure action. But Blas points to no state law requiring production of the note in non-judicial foreclosures, and a copy of the mortgage note was produced during discovery. We therefore conclude that Bank of America had authority to bring a foreclosure action against Blas.

---

[23] *See Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 12-13 (Alaska 2014) ("Alaska Statute 45.03.301 provides that [a] person may be . . . entitled to enforce the instrument even though the person is not the owner of the instrument.").

[24] AS 13.06.050 (relating to beneficiaries of trusts).

[25] *See Espeland*, 323 P.3d at 12-13.

### 2. Bank of America may pursue a non-judicial foreclosure.

Blas argues that AS 34.20.070 prevents a non-judicial foreclosure and Bank of America instead must judicially foreclose on his home.[26] He believes the superior court indicated during oral arguments that it would order judicial foreclosure. Based on this interpretation and his 2010 lawsuit, Blas believes Bank of America "is now barred from non-judicial foreclosure" because a "lawsuit was brought."

We conclude that Bank of America is entitled to pursue a non-judicial foreclosure in this case. Alaska Statute 34.20.070(a) states that "[i]f [1] the deed of trust is foreclosed judicially or [2] the note secured by the deed of trust is sued on and a judgment is obtained by the beneficiary, the beneficiary may not exercise the nonjudicial remedies described in this section." Neither scenario applies to the present situation. The deed of trust has not been foreclosed judicially; the superior court, speaking hypothetically, indicated only that if the case could not be resolved on summary judgment it would ultimately order judicial foreclosure after trial because Blas had stopped making payments on the loan. And Blas voluntarily dismissed his 2010 lawsuit pursuant to a confidential settlement agreement. Because Blas's first suit neither resulted in Bank of America obtaining a judgment nor in a judicial foreclosure on Blas's property, and there has not been a judicial foreclosure subsequent to that suit, the superior court did not err in allowing a non-judicial foreclosure to proceed.

### 3. Bank of America properly followed Alaska's non-judicial foreclosure procedures.

Blas argues that even if Bank of America can pursue a non-judicial foreclosure, defects prevent foreclosure in this case. Because Blas's arguments have no merit, we affirm the superior court's decision to dismiss Blas's claims.

---

[26] *See* AS 34.20.070(a) (explaining when non-judicial foreclosure actions may be brought).

### a. Notice of default

Notice of default was recorded December 11, 2013, and Blas was personally delivered notice on December 24. Blas argues that because AS 34.20.070(c) requires notice of default be given "[w]ithin 10 days after recording," he was not given proper notice. But AS 34.20.070(c) also states that "notice may be delivered personally instead of by mail," and AS 34.20.070(g) allows for notice to be delivered personally "up to 20 days after the notice of default is recorded." Because Blas does not dispute that he was given notice personally within the 20 days allowed, we conclude that notice of default was proper.[27]

### b. Improper substitutions

Blas contends that because Bank of America engaged in improper beneficiary and trustee substitutions, the December 2013 notice of default is invalid. But because Bank of America has the authority to foreclose on Blas's property, Bank of America also has the authority to make substitutions pursuant to the deed of trust.[28] Blas also contends that the substitutions were improper because the filings did not name all beneficiaries of the note. But there is no such requirement.[29] The substitution filing only needs to be acknowledged by "all beneficiaries under the trust deed, or their successors in interest."[30] Bank of America is a "beneficiar[y] under the trust deed" and appropriately executed and acknowledged the substitution, satisfying this requirement.

---

[27] Blas also argues that the notice of default was ineffective because it was not notarized and incorrectly listed him as a married person. But there is no requirement that the notice must be notarized or that it accurately lists a person's marital status. *See* AS 34.20.070(b).

[28] *See Espeland*, 323 P.3d at 12-13.

[29] *See* AS 34.20.120(b) (providing requirements for substitution of trustee).

[30] AS 34.20.120(a)(1).

Blas also claims the substitutions were improper when they were signed and recorded. But even assuming there were deficiencies in recording dates for the 2010 notice of default to Blas, there is no evidence that the 2013 notice of default was improperly recorded or assigned. We therefore reject Blas's chain of title and recording arguments and conclude that the superior court did not err by rejecting those claims.

### c. Dual tracking

Blas also argues that Bank of America impermissibly engaged in "dual tracking," when a lender pursues foreclosure while simultaneously attempting to reach an agreement with a borrower to avoid foreclosure. But the statute Blas cites — AS 34.20.070(a) — makes no mention of "dual tracking." Blas also points to Federal Housing Finance Agency, Office of Inspector General guidelines suggesting servicers may not pursue modification negotiations and foreclosure at the same time. But he fails to explain how they serve as legal authority for this claim. We also note that negotiations should be encouraged throughout litigation.[31] We therefore hold that the superior court did not err by dismissing Blas's "dual tracking" claim.

### 4. Blas's other claims

Blas makes a number of other claims unsupported by evidence in the record. Blas argues that the superior court denied him his day in court by granting summary judgment in Bank of America's favor. But Blas not only participated in a number of oral arguments, he also had well over a year to present *any* admissible evidence supporting his claims. Blas's status as a self-represented litigant did not relieve him of his burden "to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate

---

[31] *Cf. Marshall v. Peter*, 377 P.3d 952, 957-58 (Alaska 2016) (encouraging parties to negotiate settlements generally (citing Alaska R. Civ. P. 68)).

that a material issue of fact exists."[32] Summary judgment does not prevent litigants from utilizing the courts; it prevents pursuing claims "when no reasonable person could discern a genuine factual dispute on a material issue."[33] Because Blas had full opportunity to present his case, we conclude that he was not denied his day in court.

Blas also argues that the superior court erred by granting summary judgment on his remaining claims. His claims include: (1) "robo-signing";[34] (2) intent to defraud; (3) intentional infliction of emotional distress; (4) breach of contract; (5) conversion; (6) improper trustee appointment; (7) failing to act as a fiduciary under AS 06.26.810; (8) a host of federal violations;[35] and (9) fourteenth amendment and due process violations. Because Blas presented no evidence to "demonstrate that a material

---

[32] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 517 (Alaska 2014) (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978)) (citing *Gilbertson v. City of Fairbanks*, 368 P.2d 214, 216-17 (Alaska 1962)); *see also Erkins v. Alaska Tr., LLC*, 355 P.3d 516, 518 (Alaska 2015) ("[T]o survive summary judgment, the nonmoving party must do more than 'rest upon the mere allegations or denials of [his] pleadings.' " (alteration in original) (quoting Alaska R. Civ. P. 56(e))).

[33] *Christensen*, 335 P.3d at 520 (first citing *Yurioff v. Am. Honda Motor Co.*, 803 P.2d 386, 389 (Alaska 1990); then citing *Semlek v. Nat'l Bank of Alaska*, 458 P.2d 1003, 1007 (Alaska 1969); and then citing *Isler v. Jensen*, 382 P.2d 901, 902 (Alaska 1963)).

[34] "Robo-signing" generally "refers to various illegal practices used by some in the foreclosure industry to process foreclosure documents faster." *Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 15 n.49 (Alaska 2014).

[35] These include alleged violations under: (1) Real Estate Settlement Procedures Act; (2) Truth in Lending Act; (3) Racketeer Influenced and Corrupt Organizations Act; (4) Home Ownership and Equity Protection Act; and Dodd-Frank Wall Street Reform and Consumer Protection Act.

issue of fact exists"[36] for any of his claims and failed to explain how they provided him a cause of action on the facts of this case, the superior court did not err by dismissing them.

## V.    CONCLUSION

The superior court did not err by dismissing Blas's claims, and we AFFIRM its decision.

---

[36]    *Christensen*, 335 P.3d at 517 (quoting *Green*, 586 P.2d at 606 n.32).