**Linda St. DENIS, Plaintiff,**

v.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, United States of America, and Marston Property Management, Inc., d/b/a Marston Properties, Defendants.**

**No. A92–041 CV (JKS).**

United States District Court, D. Alaska.

Sept. 13, 1995.

Ray R. Brown, Dillon & Findley, Anchorage, Alaska and James P. Wagner, Stafford Frey & Cooper, Seattle, Washington, for plaintiff.

James E. Torgerson, Esq., U.S. Attorney's Office, Anchorage, Alaska and Andrew Guidi, Delaney, Wiles, Hayes, Reitman & Brubaker, Anchorage, Alaska, for defendants.

## DECISION

SINGLETON, District Judge.

Linda St. Denis, ("St. Denis") brought this action pursuant to the Federal Tort Claims Act. 28 U.S.C. §§ 2671–80 to recover the cost of repairing the roof of a duplex that she purchased from the United States. This Court has jurisdiction. 28 U.S.C. § 1346(a).

St. Denis claims that the government had inspected the roof prior to the sale and either discovered or should have discovered the need for repairs. Docket No. 1. She claims that because the government failed to either repair the roof or inform her of the need for repairs, she could not fairly evaluate the purchase price. St. Denis further contends that the government, having gratuitously elected to inspect the property, owed her a duty to properly conduct its inspections and inform her of the results under the Good Samaritan doctrine, Restatement (Second) of Torts 2d § 373 (1965). She seeks damages for the cost of repairs. The United States moves for summary judgment arguing that Alaska would not recognize a tort cause of action other than one for misrepresentation on these facts. Docket No. 56. This Court concludes that Alaska law limits the purchas-

er of real property to a contract action or to an action for deceit. Therefore, Alaska law does not recognize an independent tort action against the vendor for purely economic losses based on the Good Samaritan doctrine. Thus, the government's renewed motion for summary judgment will be granted.

St. Denis filed her complaint on January 22, 1992. She claims that she purchased a duplex from the United States Department of Housing and Urban Development with the intent to live with her family in one unit and rent the other. Docket No. 1. The government, which had financed an earlier purchase of the property, acquired it after foreclosing its security interest. St. Denis alleges that when the property was inspected by government agents, latent defects in the roof were discovered but were not disclosed by the government. She claims that she detrimentally relied on a mistaken assumption regarding the quality of the property. She argues that by relying on the assumptions she purchased the property and ultimately incurred expenses in repairing the defects. Docket No. 1. She seeks to recover damages to cover the costs of repair.

The government moved for summary judgment at Docket No. 17. It argued that St. Denis' claim was for negligent misrepresentation or, more accurately, negligent nondisclosure, which is expressly excluded from coverage under the Federal Tort Claims Act. 28 U.S.C. § 2680(h). The government also argued that St. Denis had signed a written contract providing *inter alia:*

[p]urchaser will accept the property in the condition existing on the date of this contract. Seller does not warrant the condition of the property, including but not limited to mechanical systems and any basement, or compliance with code require-

ments and will make no repairs to the property after execution of this contract. Docket No. 17, Exhibit 7.

The government provided two United States Supreme Court decisions to support its argument: *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983) and *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). In *Neustadt,* the Court held that a claim based upon a faulty report regarding the quality of real property sold by the government was within the exclusion of misrepresentation claims. *Neustadt,* 366 U.S. at 702, 81 S.Ct. at 1298. However, in *Block,* the Court held that a claim could be characterized as within the "Good Samaritan rule," Restatement (Second) of Torts § 323 (1965), because the claim was for negligent supervision and inspection. *Block,* 460 U.S. at 298–99, 103 S.Ct. at 1094–95. Therefore, the Court further held that the claim not be precluded as a claim for negligent misrepresentation even though the injury flowed from failure to disclose the information that would have been discovered by a non-negligent inspection. *Id.* The Supreme Court carefully defined the issue it was deciding:

The question before us is a narrow one. The Government argues only that respondent's claim is a claim of "misrepresentation" within the meaning of § 2680(h). It does not seek review of the threshold determination that respondent's complaint states a claim for negligence under the Good Samaritan doctrine that is otherwise actionable under 28 U.S.C. § 2674. Thus, we need not decide precisely what [respondent] must prove in order to prevail on her negligence claim, nor even whether such a claim lies.

*Id.,* 460 U.S. at 294, 103 S.Ct. at 1092.

The Court specifically declined to decide whether a state's laws, made applicable by the tort claims act, would impose liability on a private financial institution under the circumstances set out in *Block,*[1] whether other

---

1. The Alaska Supreme Court clearly recognizes the Good Samaritan rule where damages are claimed for personal injury or property damage. On the precise issue regarding the duties of lending institutions, the Alaska Supreme Court has declined to find a duty. *See, e.g., Wierzbicki v. Alaska Mutual Savings Bank,* 630 P.2d 998, 999–1001 (Alaska 1981). In *Wierzbicki,* the Alaska

Supreme Court considered the contract between the parties in determining that no "duty" to the plaintiff was assumed. The same would be true in this case because the contract specifically disclaims warranties, provides that the government will not repair, and provides that the purchaser takes the property "as is." *See, e.g., Stormont v. Astoria, Ltd.,* 889 P.2d 1059 (Alaska 1995) (dis-

provisions of the FTCA, such as the discretionary function exception, would preclude liability when the Good Samaritan doctrine applied, and whether Congress has established some other exclusive remedy for the plaintiff's complaints. With these reservations, the *Block* court found that Good Samaritan claims based on Restatement (Second) of Torts § 323 (1965) were not within the misrepresentation exclusion in § 2680(h). *Id.* 460 U.S. at 298–99, 103 S.Ct. at 1094–95.

On October 23, 1992, this Court granted summary judgment addressing the issues reserved in *Block.* Docket No. 29. It concluded that Alaska would not recognize a separate "Good Samaritan duty" between private parties under similar circumstances. Docket No. 29. Subsequently, this Court entered judgment in favor of the government dismissing this action. Docket No. 31. The

Ninth Circuit reversed, in part, concluding that St. Denis may have stated a claim under the Good Samaritan doctrine that would sound in tort. Docket No. 46 at 7–9 (citing *Williams v. Municipality of Anchorage,* 633 P.2d 248, 251 (Alaska 1981) and *Adams v. State,* 555 P.2d 235, 238 & 240 (Alaska 1976)).[2]

On remand, the United States renewed its motion for summary judgment. It argues that the courts of Alaska would not recognize an independent duty sounding in tort, separate from deceit, fraud or negligent misrepresentation, to inspect real property and disclose the results between contracting parties where only economic loss was suffered. Docket Nos. 56 & 62. The motion is opposed. Docket No. 59. The matter is ripe for decision and oral argument would not be helpful. D.Ak. LR 7.1(i).[3]

cussing the enforceability of an "as is" provision in a contract for the sale of rental property between experienced traders).

The Alaska legislature has adopted a tort claims act patterned on the Federal Tort Claims Act, *see* AS 09.50.250 *et seq.* While the Alaska Supreme Court has never addressed the exemption for negligent misrepresentation, it did apply an analogous analysis to the false imprisonment exemption. *See Zerbe v. State,* 578 P.2d 597, *op. on reh'g,* 583 P.2d 845 (Alaska 1978). In *Zerbe,* the court clerk negligently kept records regarding warrants resulting in Zerbe being arrested and imprisoned briefly. He sued for damages, and the trial court dismissed, finding the gravamen of Zerbe's claim was that he was falsely imprisoned. The Alaska Supreme Court reversed. It concluded that the federal cases were in conflict but that the better reasoned federal cases strictly construed the exemptions and therefore Zerbe's claim should be treated as one for simple negligence. *Zerbe,* 578 P.2d at 599–601. *Zerbe* was later overruled in *Stephens v. State Dep't of Revenue,* 746 P.2d 908, 912 n. 5 (Alaska 1987). In *Stephens,* the court, in effect, held that the state has no duty enforceable by private citizens to keep proper records and avoid unnecessary litigation. *Stephens,* 746 P.2d at 911–12. In a later case, *Walt v. State,* a state employee sought to sue his employer for negligently failing to exercise reasonable care in investigating whether grounds existed for his termination. By partially relying on *Stephens,* the court recognized that plaintiff's claim was a transparent attempt to turn a claim for breach of contract into a tort and, therefore, rejected the claim. *Walt v. State,* 751 P.2d 1345, 1351 (Alaska 1988).

While the Alaska Supreme Court has not decided any cases distinguishing between negligent misrepresentation and negligent acts leading up

to communication of false information in the tort claims context, there is a case arguably inconsistent with the utilization of *Block* in that type of situation. *See Austin v. Fulton Ins. Co.,* 444 P.2d 536, 538–39 (Alaska 1968) (finding that the insurance agent expressly undertook to obtain insurance and failed to do so, the court characterized this as a negligent misrepresentation case and not as a contract case); *see also Jones v. Wadsworth,* 791 P.2d 1013, 1018 n. 2 (Alaska 1990) (dissenting opinion) (citing *Austin* for this proposition). In sum, even apart from the economic loss rule, it does not appear that the Alaska Supreme Court would recognize a tort duty separate from deceit in this case.

2. In each of these cases, the plaintiff sought damages for personal injuries. *But see Shaner v. United States,* 976 F.2d 990, 994 (6th Cir.1992) (applying Ohio law in an action under the Federal Tort Claims Act but recognizing that Restatement (Second) of Torts § 323 (1964) only applies to "physical harm" and would be unavailable where only economic loss was alleged). Restatement § 323 (1965) does limit itself to "physical harm" to the plaintiff's person or things.

3. The criteria for holding oral argument in this district in both criminal and civil cases is set out in *United States v. Cheely,* 814 F.Supp. 1430, 1436 n. 4 (D.Alaska 1992), *aff'd,* 36 F.3d 1439 (9th Cir.1994). In this case, the law of Alaska has been made clear by decisions of the Alaska Supreme Court reached since the initial summary judgment. This Court identified the cases in an earlier Order and the parties have thoroughly briefed the issues. Thus, the dispositive issue has been recently authoritatively decided and the facts and legal arguments are adequately presented by the existing record.

## DISCUSSION

■ Previously in this case, the Ninth Circuit held that the courts of Alaska would recognize a duty sounding in tort between parties to a real estate contract; a duty which obligates a seller, who had inspected the property and discovered defects, to convey the results of that inspection to prospective purchasers. *St. Denis v. United States,* No. 93–35235, 1994 WL 603053 (9th Cir. Nov. 1, 1994), slip op. at 6–8, 1994 WL 603053 (stating that under Alaska law, once an inspection is undertaken, a duty is owed to whoever might foreseeably rely on that inspection). It is undisputed that agents of the government inspected the property, particularly the roof, and declared it satisfactory. It is also undisputed that an independent contractor employed by the government warned its agents of the defective condition of the roof. Thus, a trier of fact could conclude that the government was negligent in conducting its inspections and reporting the results.[4] The issue remains whether, under Alaska law, such negligence is actionable by a purchaser of real property against the vendor even though the purchaser suffered only economic loss.[5] Specifically, the query is whether Alaska has adopted the general rule that limits claims for economic loss to the law of contracts and, if so, whether there exist exceptions to the general rule that are applicable to this case.

■ Since the Ninth Circuit panel determined that St. Denis did state a claim, that decision is binding under the doctrine of the law of the case. *See, e.g., Richardson v. United States,* 841 F.2d 993, 996 (9th Cir. 1988), *amended,* 860 F.2d 357 (9th Cir.1988); *Bell Helicopter Textron, Inc. v. United States,* 755 F.Supp. 269, 272 (D.Alaska 1990), *affirmed,* 967 F.2d 307 (9th Cir.1992). There are, however, exceptions to that doctrine, where intervening changes in the facts or the

4. In comparing this case with *Adams v. State,* St. Denis is in privity with the government while the plaintiff in *Adams* was not. *Adams v. State,* 555 P.2d 235 (Alaska 1976). In most other respects, however, their situations are similar. In both cases, government agents discovered defects during inspections and failed to remedy them. *See Adams,* 555 P.2d at 238–41. The distinction between *Adams* and *Williams* with this case is in the nature of the damages claimed: the difference between personal injuries and economic loss. *See, Adams,* 555 P.2d 235, and *Williams v. Municipality of Anchorage,* 633 P.2d 248 (Alaska 1981). The Alaska Supreme Court has declined to permit someone not in privity, like the plaintiff in *Adams,* to sue in tort for economic losses based on a negligent inspection. *See, e.g., State for the Use of Smith v. Tyonek Timber, Inc.,* 680 P.2d 1148, 1151–54 (Alaska 1984) (favorably citing *Moorman Mfg. Co. v. Nat'l Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982)). There is no reason to believe that the court would entertain such an action where there is privity because, in such a case, the contract determines the rights of the parties.

5. It is important to clearly identify the issue being addressed. It is certainly arguable that Alaska would permit an action for misrepresentation on the facts alleged by St. Denis. *See, e.g., Bauman v. Day,* 892 P.2d 817 (Alaska 1995) (fraud); *Barber v. Nat'l Bank of Alaska,* 815 P.2d 857, 861–63 (Alaska 1991) (negligent misrepresentation); *Carter v. Hoblit,* 755 P.2d 1084 (Alaska 1988); *Bevins v. Ballard,* 655 P.2d 757 (Alaska 1982) (innocent misrepresentation) (overruled by statute in part AS 09.65.230); *Clary Ins. Agency v. Doyle,* 620 P.2d 194, 201 (Alaska 1980). In

fact, in *Turnbull v. LaRose,* 702 P.2d 1331 (Alaska 1985), the court specifically addressed the duty of an agent of the vendor to disclose after acquiring information to ensure that earlier disclosures would not be misleading. Such a claim, while actionable under Alaska law, is specifically precluded by the Federal Tort Claims Act.

In addition, Alaska might recognize an action on the contract of sale but such an action, if against the United States, in a controversy involving an amount exceeding $10,000, must be brought in the court of claims. 28 U.S.C. §§ 1346(a)(2), 1491.

It would appear that the implied warranty of habitability, which a majority of the courts in the nation now recognize, sounds in contract not tort and would therefore be properly brought in the court of claims. *See, e.g., Radaker v. Scott,* 109 Nev. 653, 855 P.2d 1037 (1993). The Alaska Supreme Court has not adopted the implied warranty of habitability, but since this Court would not have jurisdiction over such a claim, it is unnecessary to determine whether the Supreme Court of Alaska will adopt such a warranty.

It is also unnecessary to determine whether the disclaimer in this case would serve to disclaim such a warranty if recognized. *See* Frank J. Wozniak, Annotation, *Construction and effect of provision in contract for the sale of realty by which purchaser agrees to take property "as is" or in existing condition,* 8 A.L.R.5th 312 (1992). The Uniform Land Transactions Act § 2–311, 13 U.L.A. 469 (1986) permits such a warranty to be disclaimed. *See Stormont,* 889 P.2d 1059 (discussing "as is" provision in real estate contract with facts similar to those in this case).

applicable law make reliance on the earlier decision improper. *Bell,* 755 F.Supp. at 272–73. The gravamen of St. Denis' claim is that she purchased a defective home. Clearly, she has a potential action for breach of contract. That claim, however, would be litigated in the court of claims, not this Court.[6] It is less clear but likely that she would have a separate claim for misrepresentation either in equity for restitution or at law for negligent or fraudulent misrepresentation. *See ARCO Alaska, Inc. v. Akers,* 753 P.2d 1150, 1153 (Alaska 1988); *Great Western Sav. Bank v. George W. Easley Co.,* 778 P.2d 569, 580–81 (Alaska 1989); *Turnbull v. LaRose,* 702 P.2d 1331, 1334 (Alaska 1985) (non-disclosure).[7] The United States has not consented to be sued for such claims. The issue is whether St. Denis has a tort claim separate from misrepresentation. The applicable law is the law of Alaska because, under Alaska law, the government's obligations are measured by the obligations of a private party. *Bell,* 755 F.Supp. at 271–72. The line between tort and contract has received significant, sometimes conflicting, attention from the Alaska Supreme Court. However, the issue has recently received considerable attention because the Alaska Supreme Court has reached four decisions regarding this issue since this Court's original order granting summary judgment. In fact, with these cases, the Alaska Supreme Court has resolved most of these recurring conflicts and points to a proper resolution of this case. *Stormont,* 889 P.2d 1059 (discussing the significance of an "as is" clause in a real estate sales contract); *Pedersen v. Flannery,* 863 P.2d 856 (Alaska 1993) (refining the distinction between tort and contract for purposes of the statute of limitations in professional malpractice cases); *State Dep't of Nat. Resources v. Transamerica Premier Ins. Co.,* 856 P.2d 766 (Alaska 1993) (holding that negligent breach of a duty assumed in a contract does not give rise to a separate tort claim) and *Pratt & Whitney Canada, Inc. v. Sheehan,* 852 P.2d 1173 (Alaska 1993) (holding that products liability cases only give rise to a tort claim where product failure harms public safety). In order to place St. Denis' claims in the context created by these cases, a review of Alaska law is necessary.[8]

There has always been a tremendous overlap between contract claims and tort claims and their respective remedies. *See, e.g., Dillingham v. CH2M Hill Northwest Inc.,* 873 P.2d 1271, 1275 (Alaska 1994); *Wadsworth,* 791 P.2d at 1017. In many cases, therefore, it does not matter much if the plaintiff purports to waive the tort and sue in assumpsit or vice versa. There are, however, some differences between tort and contract rights and remedies where it can make

---

**6.** The Tucker Act gives the Court of Claims exclusive jurisdiction over contract claims, express or implied, against the United States where the amount in controversy exceeds $10,000. 28 U.S.C. §§ 1346(a)(2), 1491. *DSI Corp v. Sec. of Housing and Urban Development,* 594 F.2d 177, 180 (9th Cir.1979).

**7.** In *Apollo Group, Inc. v. Avnet, Inc.,* 58 F.3d 477 (9th Cir.1995), the court interpreted Arizona law and concluded that some negligent misrepresentations claims would be barred by the prohibition on recovering economic damages in negligence cases. There is a split of authority on this issue. *Compare 2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel, & Frazier, Ltd.,* 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990) *with Berschauer/Phillips v. Seattle Sch. Dist.,* 124 Wash.2d 816, 881 P.2d 986 (1994) (discussing Restatement (Second) of Torts § 766C and comment e). Since any claim St. Denis would have under Restatement (Second) of Torts § 552 would be within the government's immunity, it is not necessary to determine whether the Alaska Supreme Court will reexam-ine its deceit jurisprudence in light of the developing law on recovery of economic losses in tort.

**8.** A superficial review of Alaska case law might suggest substantial inconsistency and uncertainty regarding the availability of a negligence claim for economic loss. This uncertainty disappears when we recognize that in almost all of the cases in which the Alaska Supreme Court seems to permit or suggest the availability of a tort action for economic loss, the issue was not directly considered but simply hovered in the background. *See, e.g., Dillingham v. CH2M Hill Northwest Inc.,* 873 P.2d 1271, 1277 n. 12 (Alaska 1994) (no discussion of Alaska cases reserving issues); *Barber v. Nat'l Bank of Alaska,* 815 P.2d 857, 861–63 (Alaska 1991) (no discussion of economic loss issue). Generally, courts do not consider such cases to have precedential value in resolving an issue not actually discussed. *See, e.g., Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925) (issues which lurk in the record); *Losada v. Golden Gate Disposal Co.,* 950 F.2d 1395, 1399 (9th Cir.1991); *Berschauer/Phillips,* 881 P.2d at 991.

a great difference depending on which claims are available. These are the areas that have spawned most of the litigation. Thus, in Alaska the battle has been fought in two separate lines of cases. The first line addresses contracts for the sale of goods and explores a purchaser's ability to sue in tort for strict liability and, by extension, negligence where the purchased product is found defective. A tort action is frequently necessary if the plaintiff wishes to avoid limitations on contractual remedies under the Uniform Commercial Code and wishes to avoid defendant's attempts to escape from liability by disclaiming warranties. The second line of authority addresses the applicable statutes of limitations, tort or contract, for alleged professional malpractice. The statute of limitations is shorter for tort than for contract.

To decide this case, it is necessary to examine both lines of authority. First, the Court must look at the cases discussing the availability of strict liability and, by extension, negligence claims for defective products where only economic loss is suffered. The majority rule is that a plaintiff complaining that she received consideration less valuable than what she expected, must sue on the contract. Even if the purchaser complains that defects actually rendered the property less valuable than she expected, she is still seeking damages for economic loss. In such cases, the purchaser is limited to the contract and has no separate tort action. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870, 106 S.Ct. 2295, 2301, 90 L.Ed.2d 865 (1986); *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477 (9th Cir.1995). *Land Title Co. of Alaska, Inc. v. Anchorage Printing Inc.*, 783 P.2d 767, 769 n. 1 (Alaska 1989). *2314 Lincoln Park West Condo v. Mann, Gin, Ebel, & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990); *Berschauer/Phillips*, 881 P.2d at 991–93. The majority rule excludes both strict liability and negligence claims where only economic loss is claimed and applies the principal generally to products liability cases, real property transactions and service contracts. *See, e.g., Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982) (real property); *Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 690 P.2d 158, 164

(App.1984) (same). Under the majority rule, the Good Samaritan duty would not be recognized in favor of a purchaser of real estate against her vendor when only economic loss is alleged. In contrast, if a party to a contract assumes duties under the contract, breaches one or more of those duties, and, as a result, personal injuries or property damage are suffered, the injured party may elect to sue in tort. Thus, under the majority rule, the nature of the relief sought determines whether redress may be sought in an action in tort or contract.

■ The Alaska Supreme Court was, at one time, critical of any distinction between claims for personal injury and property damage on the one hand and economic loss on the other. It seemed willing to allow one in privity with the defendant to nevertheless sue in tort for economic loss traceable to a "negligent" breach of contractual duties. *See Mattingly v. Sheldon Jackson College*, 743 P.2d 356, 359–61 (Alaska 1987) and compare *Barber v. Nat'l Bank of Alaska*, 815 P.2d 857, 861–63 (Alaska 1991) (seeming to permit a separate tort claim based on detrimental reliance on a contractual promise that is breached). These two cases appeared to be inconsistent with cases holding that the sole remedy for a negligent breach of a duty assumed in the contract, where only economic loss is suffered, is an action on the contract. *Transamerica Premier*, 856 P.2d at 772–75; *Alaska Pac. Assurance Co. v. Collins*, 794 P.2d 936, 946 (Alaska 1990) (declining to recognize action for "negligent" breach of contract). Nevertheless, if we review all of the applicable cases, the proper rule becomes clear. While the Alaska law departs in some respects from the rule in *East River Steamship*, the Alaska rule has solidified enough to the point that a plaintiff who claims that a product was defective and seeks only damages for economic loss must sue on the contract and has no independent action in tort unless she can show that the defect created a significant risk of personal injury or property damage. *Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P.2d 1173 (Alaska 1993); *Shooshanian v. Wagner*, 672 P.2d 455, 464 (Alaska 1983); *Northern Power & Eng'g Corp. v. Caterpillar Tractor Co.*, 623 P.2d 324

(Alaska 1981); *Cloud v. Kit Mfg. Co.,* 563 P.2d 248, 250 (Alaska 1977); *Morrow v. New Moon Homes Inc.,* 548 P.2d 279, 285–86 (Alaska 1976). While it is not always possible to discern which side of the line a given claim falls on in the contemplation of the Alaska Supreme Court, it is clear that St. Denis' claim would not permit a tort action. *See, e.g., Cloud,* 563 P.2d at 251, and *Morrow* 548 P.2d at 281–82 (rejecting a tort claim where the purchaser of mobile home complained inter alia of leaking roof).[9] There is nothing in any Alaska case that suggests that the Supreme Court would view the leaky roof of St. Denis' home differently than it viewed the leaky roof of Morrow's trailer home. In other words, in Alaska the distinction between actions properly brought in tort and those limited to the contract is between the type of damages sought. More specifically, when products do not meet the purchaser's expectations, the purchaser's redress must be found in an action on the contract or for deceit. On the other hand, in cases where there was a risk to persons or property, there is an action in tort. *Northern Power,* 623 P.2d at 329.[10]

The second line of relevant cases involves the appropriate statute of limitations for professional malpractice, an area in which tort and contract concepts overlap. *See, e.g., Pedersen v. Flannery,* 863 P.2d 856 (Alaska 1993); *Lee Houston & Assoc., Ltd. v. Racine,* 806 P.2d 848 (Alaska 1991); *Bibo v. Jeffrey's Restaurant,* 770 P.2d 290 (Alaska 1989), and *Van Horn Lodge, Inc. v. White,* 627 P.2d 641, 643 (Alaska 1981). The early decisions of the Alaska Supreme Court distinguished between actions in tort and actions in contract by searching for the gravamen of plaintiff's claim. If the action was to enforce a specific promise in the contract, then the gravamen of the complaint was in contract. However, if the contract merely provided the context in which the relationship between plaintiff and defendant arose and the duty breached arose by operation of law, imposed on the parties without regard to their consent, then the gravamen of the action was in tort. *Wadsworth,* 791 P.2d 1013; *Van Horn Lodge, Inc.,* 627 P.2d at 643; and compare *Lewis v. Anchorage Asphalt Paving Co.,* 535 P.2d 1188 (Alaska 1975), appeal after remand, 579 P.2d

**9.** *Shooshanian v. Wagner,* 672 P.2d 455, 464 (Alaska 1983) is consistent with this analysis because the Alaska Supreme Court viewed it as a property damage case. *State for the Use of Smith v. Tyonek Timber, Inc.,* 680 P.2d 1148, 1152 n. 7. *Mattingly* is consistent with this analysis since the specific negligence complained about, construction of a defective ditch, actually caused personal injuries to Mattingly's employees. *Mattingly,* 743 P.2d at 358, cf. *Pratt & Whitney,* 852 P.2d at 1177 n. 6 (loss must occur under dangerous circumstances). *Barber* is not consistent and must be viewed as either a misrepresentation claim disguised as a breach of a broader duty claim or treated as disapproved sub silentio by later cases developing the *Pratt & Whitney* rule.

**10.** Compare *Barber,* 815 P.2d 857 and *Pratt & Whitney,* 852 P.2d 1173. St. Denis' reliance on *Mattingly* appears misplaced. In *Land Title,* the court indicated that *Mattingly* did not resolve the issue of the availability of a tort remedy in cases where only economic loss was alleged. *Land Title,* 783 P.2d at 769 n. 1. This observation is unclear unless we read into it the holdings in *Northern Power* and *Morrow. See Northern Power,* 623 P.2d 324 and *Morrow,* 548 P.2d 279. *Mattingly,* like *Northern Power* and *Morrow,* involved claims for economic loss, but involved it in a context where the alleged negligence had caused personal injuries albeit to the plaintiff's employees not the plaintiff. The result in *Mat-*

*tingly* is, therefore, consistent with the holding in *Pratt & Whitney. Mattingly,* 743 P.2d at 360–61; *Pratt & Whitney,* 852 P.2d at 1181.

In *Barber,* the court devoted the bulk of the discussion to the claim for negligent misrepresentation. Nevertheless, the court does discuss what appears to be a separate negligence claim that the court treats apart from its discussion of negligent misrepresentation. *Barber,* 815 P.2d at 861–62. It is clear in *Barber* that Barber and the bank were in privity, and that Barber was only claiming for economic loss. The claim rested on Barber's allegation that a bank employee told Barber that a foreclosure sale would be postponed and then mistakenly permitted it to go forward. Barber allegedly relied on the promise and suffered damage because of increased federal tax liability. The Supreme Court briefly discussed this claim separately from a discussion of misrepresentation, and it is not clear that the court saw this as any different from misrepresentation. *See Bevins v. Ballard,* 655 P.2d 757, 760–61 (Alaska 1982) (defining deceit broadly). It appears that the bank did not question the availability of a tort remedy for purely economic loss despite *Northern Power.* To the extent that *Barber* appears to permit such a remedy apart from deceit, it is inconsistent with *Pratt & Whitney. See, e.g., Berschauer/Phillips,* 881 P.2d at 991 (questions which lurk in the background but are not specifically addressed are not decided so as to establish precedent).

532 (Alaska 1978) and 629 P.2d 65 (Alaska 1981) with *Pepsi Cola Bottling Co. of Anchorage Inc. v. Superior Burner Service Co., Inc.*, 427 P.2d 833 (Alaska 1967). The Alaska Supreme Court reached an arguably contrary decision in *Bibo*, 770 P.2d at 295 (holding that causes of actions against directors of corporations for breach of fiduciary duty are contract actions). The conflict was apparently resolved in *Lee Houston* where the court declined to follow the gravamen test and seemed to hold that an action for professional malpractice is always an action on an implied contract and not in tort. *Lee Houston*, 806 P.2d at 853–54. *Lee Houston* was clarified in *Pedersen* where the court made it clear that when the damages sought are purely for economic loss, the action must be on the contract, and when the action is for personal injuries or, by extension, for damage to property or, by further extension, when there is a risk of injury or damage to property, the action is in tort. *Pedersen*, 863 P.2d at 857–58.[11]

11. The gravamen test, as applied in *Van Horn Lodge, Inc.*, 627 P.2d at 643, has superficial appeal but fails analysis. In an important sense, all obligations in tort and contract are imposed by law. Promises are not self enforcing. Modern day imitators of Machiavelli's Prince would as happily disclaim their promises as he, were the law permissive and changed circumstances made broken promises profitable. Tort and contract do not differ on the ultimate source of obligation which is the availability of courts prepared to enforce obligations, but do differ in two respects, the role the parties themselves play in determining their rights and responsibilities and the time at which duties and obligations are determined. Contract law is individualistic; it permits the parties a great deal of freedom in determining what their rights will be and how future risks will be allocated. Tort law is essentially paternalistic; judges and, particularly appellate judges, decide what a person's rights and obligations will be with little input from the parties themselves. Contract law is forward looking by permitting the parties to assume obligations and distribute risk before problems arise. Tort law is backward looking; duties and obligations are ultimately determined by jury or appellate court long after problems arise and injury is suffered. As we shall see, contract law serves the goals of predictability, certainty, efficiency and cost control but at the risk of an occasional emotionally unsatisfactory result. In contrast, tort law serves the interest of flexibility and, more effectively, guards against results which appellate judges and juries find emotionally unsatisfying. However, tort law does not provide for certainty and predictability and, in practice, results in tremendous cost and interminable delay.

Another problem with the gravamen test turns on ambiguity in the phrase "implied obligation." An obligation may be implied in fact or in law and failure to distinguish between the two and understand and apply this distinction leads to frequent confusion. An obligation implied in law exists without regard to the parties intentions and, therefore, is not disclaimable. It is the conceptual equivalent of a tort obligation. In contrast, an obligation implied in fact is derived from the unexpressed intent of the parties disclosed through circumstantial evidence. Like express promises, implied promises may be disclaimed, and when they are, they become "express". In considering the Alaska law on this subject, it is important to recognize that the Alaska cases speak to professional malpractice as if the issues were confined to the professions. In fact, the professional's duty to perform in a workmanlike manner is simply an application of general agency law. *See* Restatement (Second) of Agency § 376 *et seq.* (1958). If we assume that failure to perform a contract at all, or performing a contract negligently does not give rise to a separate action in tort, and that no statute generally creates a private right of action for violations of agency responsibilities, we must seek an Alaskan answer to the question whether the agent's duty of workmanlike service is tort or contract in the common law. *See Transamerica Premier*, 856 P.2d at 773; *Collins*, 794 P.2d at 946; *cf. Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218, 1221–23 (1987) (permitting separate tort action justified where statute or public policy imposes a duty which would exist in the absence of contract and would survive attempts to affirmatively disclaim it) (cited with approval in *Collins*, 794 P.2d at 946). The specific answer, after uncertainty, was given in *Pedersen* and *Lee Houston*. However, further study is needed to explain these decisions. Alaska normally looks to the various Restatements for aid in developing the common law. When the Alaska Courts do this, it is clear that the duties of an agent in general, and the specific duty under consideration, to exercise customary skill, care and effort, is subject to the agreement of the parties. *See* Restatement (Second) of Agency § 376 (1958); *see id.* at § 379; *See also Black v. Dahl*, 625 P.2d 876, 881 (Alaska 1981) (discussing the contractual duty to exercise reasonable care as flowing from a fiduciary duty assumed by contract). In fact, the Restatement points out that in the absence of a statute on point, the duties of an agent, other than the principal, are controlled by the agreement. Restatement (Second) of Agency § 379 cmt.a (1958). An agreement may therefore absolve an agent of liability for "negligence". *Id.; see also* 3 Arthur L. Corbin, Corbin on Contracts, §§ 574–75 (1960 & Supp.1994); *cf. Bank of California N.A. v. First Am. Title Ins. Co.*, 826 P.2d 1126, 1130 (Alaska 1992) (discussing contract provi-

■ In sum, subsequent to the initial grant of summary judgment in this case, the Alaska Supreme Court has clarified the law regarding the issues reserved in *Block,* 460 U.S. at 294–96, 103 S.Ct. at 1092–93 in three cases: *Sheehan, Pedersen,* and *Transamerica Premier.*[12] Now it is clear that the Alaska Supreme Court would recognize a Good Samaritan cause of action pursuant to Restatement (Second) Torts § 323 (1965) but only if the breach of duty created a risk of personal injury or property damage. This result is consistent with the plain language of the provision which is limited to actions to recover for physical harm to the plaintiff's person or property. Where as here the plaintiff is merely complaining that she purchased property that was less valuable than she reasonably believed it to be, her sole remedies can only be an action on the contract or an action for negligent misrepresentation. Since St. Denis cannot sue the government for misrepresentation or breach of

sions disclaiming liability for negligence) with *Dillingham,* 873 P.2d at 1275–78 (construing a statute to preclude contractual limitations of liability in construction contracts). It would appear, therefore, that the Alaska Supreme Court would view the implied promise to exercise customary skill, effort and care as one implied in fact as opposed to implied in law and that the breach of that promise would sound in contract not tort. *See, e.g.,* 3 Arthur L. Corbin, Corbin on Contracts, § 567 (1960 & Supp.1994) (discussing promises implied in fact and applying the doctrine to agency contracts similar to those in malpractice actions). This interpretation gives force to the Alaska Supreme Court's concern that a broad tort remedy should not disrupt the certainty of commercial transactions and prevent parties from allocating prospective losses in an acceptable way. *Transamerica Premier,* 856 P.2d at 774. It also accords with common sense. In the absence of a specific provision to the contrary, it is reasonable to assume that a service provider or professional is capable of performing the contracts they enter into and will attempt performance using customary skill. Requiring an express disclaimer requires parties to act in conformity with ordinary expectations or clearly communicate an intent to depart from such expectations. See *Wadsworth,* 791 P.2d at 1016–17 (duty to exercise reasonable care implied in fact); *Bibo,* 770 P.2d 290 (same); *Lewis,* 535 P.2d at 1195–96 (same, construction contract). *Pepsi Cola v. Superior Burner Serv. Co.,* is apparently inconsistent with *Lee Houston* in viewing as a tort what later cases would view as an implied warranty. However, on inspection it is clear that *Superior Burner* can be reconciled. The real dispute in *Superior Burner* was not over the nature of the duty but its scope. Plaintiff argued that a promise to repair a burner guaranteed a favorable result. By extension, a promise to undertake legal representation would guarantee winning the case. A promise to provide medical services would guarantee a cure. The Supreme Court rightly rejected this view of the scope of the undertaking. Properly limiting it to a promise to exercise ordinary skill. Later cases make it clear that this is a contractual duty not a tort duty unless the breach of duty causes personal injury or property damage. *See Pedersen,* 863 P.2d at 857–58.

Further support for this analysis is found in the Alaska cases discussing the covenant of good faith and fair dealing, originally derived from the Uniform Commercial Code but later extended to all contracts. While the scope of this "duty" is to an extent uncertain, it clearly assures a contracting party that other parties to the contract will not affirmatively seek to deprive her of the benefits of her bargain. Thus, the implied warranty of workmanlike conduct and the covenant of good faith and fair dealing are complementary in the case of service contracts. The Alaska Supreme Court has made it clear that with the exception of insurance contracts, which are treated as unique, the covenant of good faith gives rise only to contract remedies. see *O.K. Lumber Co. Inc. v. Providence Washington Ins. Co.,* 759 P.2d 523, 525–26 (Alaska 1988).

12. In *Transamerica Premier,* the court suggested that an exception to the rule that an action between those in privity must be on the contract might be recognized for professional malpractice. *Transamerica Premier,* 856 P.2d at 772 (citing *Clark v. City of Seward,* 659 P.2d 1227, 1231 n. 3 (Alaska 1983) (noting that plaintiff brought overlapping tort and contract claims and observing that the "gravamen" of the claim was in tort citing *Van Horn Lodge,* 627 P.2d at 643)). The *Transamerica Premier* court apparently overlooked the fact that where, as in *Clark,* the claim was for economic damages, the gravamen test had been abandoned in favor of a nature of the damages test in *Lee Houston.* Any suggestion that the gravamen test had been resurrected was removed in *Pedersen.* In short, reading *Transamerica Premier* and *Pedersen* together makes it clear that any claim for professional negligence sounds in contract not tort where only economic damages are sought. It appears, therefore, that any contrary implication in *Barber,* 815 P.2d 857, *Swenson Trucking and Excavating, Inc. v. Truckweld Equip. Co.,* 604 P.2d 1113, 1117–18 (Alaska 1980) and *Superior Burner Serv. Co.,* 427 P.2d 833 have been disapproved sub silentio to the extent that they would have permitted an action for tort by one claiming only economic loss. The same would be true of cases like *Thomas v. Cleary,* 768 P.2d 1090, 1092 n. 6 (Alaska 1989) (relying on the gravamen rule to find a tort duty) and *Greater Area, Inc. v. Bookman,* 657 P.2d 828, 829 (Alaska 1982) (same).

contract in this court, her action must be dismissed. It is important to stress that the Alaska Supreme Court cases rejecting tort claims for economic losses do not rely on considerations peculiar to products liability or professional malpractice. Each of the reasons offered is as applicable to relationships arising out of real estate sales contracts as other contractual relationships. It, therefore, appears that Alaska cases foreshadow a general rule precluding negligence actions by those in privity where only economic losses are alleged. Since this is not an intentional tort case, it is not necessary to evaluate the reasons Alaska will not permit tort cases for economic loss in the context of intentional torts.

There are seven possible objections to this analysis. First, it could be argued that the Supreme Court will not recognize a separate tort claim for strict liability between those in privity where only economic loss is suffered but will permit a tort action for negligence. This interpretation of *Northern Power* was rejected in *Tyonek,* 680 P.2d at 1151–54 (holding that the preclusion of tort remedies for only economic loss extended to negligence claims).

Second, it could be argued that the ban on tort claims for economic loss only applies to merchants and, therefore, consumers should be permitted to sue in tort. *See Tyonek,* 680 P.2d at 1154 (mentioning this possibility). This approach was considered and rejected in *Pratt & Whitney,* 852 P.2d at 1179 n. 8 (finding the distinction problematical and concluding that the same rules would govern consumer and commercial cases). It would be impossible to draw a principled distinction between St. Denis and the Morrows, both of whom were consumers. *See, e.g., Tyonek,* 680 P.2d at 1151 (explaining the court's refusal to grant a tort remedy for economic loss sustained by what the court described as the purchasers of a thoroughly defective mobile home).

Third, it could be argued that the ban against tort claims for economic loss only applies to those who are not in privity and that where one party to a contract sues another party to a contract she should be able to sue both in contract and in tort, depending upon the nature of her claim. This is the gravamen test which distinguishes between claims on specific promises in the contract and claims based on duties imposed by law which arise in the context of the contact. This view was rejected in *Lee Houston,* 806 P.2d at 853–55 and the basis for the rejection was made clear in *Pedersen,* 863 P.2d at 857–58. In *Pedersen,* the court held that whether an action could be brought as a tort or breach of contract turned on the nature of the harm suffered. *Id.* The *Pedersen* court reasoned that where economic loss was alleged, the action is limited to the contract and where personal injuries or property damage is suffered, the action is limited to the law of torts. *Id.*

Fifth, it could be argued that the plaintiff should have an election between suing in tort or on the contract. This view, however, was rejected in *Lee Houston,* 806 P.2d at 853. *See also, Wadsworth,* 791 P.2d at 1017 ("[t]his court should avoid applications of the law which lead to different substantive results based upon distinctions having their source solely in the niceties of pleading and not in the underlying realities") (quoting *Higa v. Mirikitani,* 55 Haw. 167, 517 P.2d 1, 4–5 (1973)).

Sixth, it could be argued that *Pratt & Whitney* only applies to claims for defective products within the scope of the Uniform Commercial Code. This argument overlooks *Lee Houston* and the other statute of limitations cases which deal with the border line between negligence and breach of an implied contract in the provision of services. The settled law of Alaska is that these actions sound in contract where only economic loss is sought. St. Denis claims that she has failed to receive the anticipated benefit of her bargain, a home with a leakproof roof, such claims historically sound in contract not tort. *See East River Steamship,* 476 U.S. at 870, 106 S.Ct. at 2302 ("[L]oss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of [her] bargain-traditionally the core concern of contract law.")[13]

---

**13.** There is no principled basis for granting greater or different protection to purchasers of

Seventh, the Alaska Supreme Court has permitted tort actions arising out of contractual relations in insurance cases. However, this is not an insurance case. *See, e.g., Clary Ins. Agency v. Doyle,* 620 P.2d 194, 199 (Alaska 1980) (collecting cases).

Finally, and eighth, it could be argued that this view overlooks extra contractual duties which may exist side by side with contractual duties. *See Harrison v. Dean Witter Reynolds, Inc.,* 715 F.Supp. 1425, 1432–34 (N.D.Ill. 1989), aff'd in part and rev'd in part, 974 F.2d 873 (7th Cir.1992); *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60 (1979); *Ott v. Alfa–Laval Agri, Inc.,* 31 Cal. App.4th 1439, 37 Cal.Rptr.2d 790, 796–802 (5 Dist.1995). This is really a variation of the gravamen test which is addressed and rejected earlier in this decision. To reprise, Alaska no longer recognizes an extra contractual duty to prevent economic loss apart from, perhaps, misrepresentation and other intentional torts. *Tyonek,* 680 P.2d at 1151–54. This was expanded in *Pratt & Whitney* when the court held that distinctions between merchants and consumers should be disregarded. *Pratt & Whitney,* 852 P.2d at 1179 n. 8.

It is true that the Alaska Supreme Court has considered the question of common law duties on numerous occasions. The court has recognized that a negligence action can exist only if the defendant owes the plaintiff a duty of care.

> .... "Duty" has been defined as the "expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."

*Selden v. Burnett,* 754 P.2d 256, 259 (Alaska 1988) (citations omitted). Nevertheless, a few additional comments may be in order. Generally, beginning in 1968 with *Howarth v. Pfeifer,* 443 P.2d 39, 42 (Alaska 1968), the Alaska Supreme Court has explained developments in the jurisprudence of common law "duties" by reference to a multi-factored test derived from *Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal.Rptr. 821, 823, 364 P.2d 685, 687 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962) and *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16, 18–19 (1958). These factors are: 1) the extent to which the defendant's conduct is aimed at the plaintiff; 2) the extent of anticipated reliance by the plaintiff on the defendant; 3) foreseeability of harm to plaintiff; 4) the degree of certainty that the plaintiff in fact suffered injury; 5) the closeness of the connection between the defendant's conduct and the plaintiff's injury; and, 6) deterrence or the policy of preventing future harm.[14] Without always giving credit to *Lucas* and *Biakanja,* the Alaska Supreme Court has continued to rely on this test to explain its decisions recognizing or refusing to recognize new "duties" both in the context of negligent misrepresentation and negligence, generally. *See, e.g., Estate of Day v. Willis,* 897 P.2d 78, 80–82 (Alaska 1995); *Bank of California v. First American,* 826 P.2d 1126, 1129–30 (Alaska 1992); *Selden,* 754 P.2d at 259; *Stephens,* 746 P.2d at 910–12; *Division of Corrections Dept. of Health & Social Services v. Neakok,* 721 P.2d 1121, 1125 (Alaska 1986); *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.,* 628 P.2d 554, 555 (Alaska 1981); *Busby v. Municipality of Anchorage,* 741 P.2d 230,

residential real estate than is accorded purchasers of mobile homes. In fact, the Alaska Supreme Court has been less protective. *See Stormont,* 889 P.2d 1059 (generally approving "as is" contracts in real estate sales). There are, of course, historical reasons for distinguishing between the sale of real estate and the sale of goods and between tort and contract. However, the Alaska Supreme Court has never deferred to history. *cf. Howarth v. Pfeifer,* 443 P.2d 39, 44 (Alaska 1968) (discussing AS 01.10.010 which makes the common law the rule of decision in the absence of statute and concluding that the common law is dynamic not static and constantly adapts to meet new challenges and resolve new problems) with *Hebel v. Hebel,* 435 P.2d 8 (Alaska 1967) (in developing the "common law" in

Alaska the court does not look to the weight of authority but to the most persuasive reasoning). *See also Chizmar v. Mackie,* 896 P.2d 196, 200 (Alaska 1995) (looking to precedent, reason and policy in developing the common law). *Wells v. State,* 687 P.2d 346, 348–49 (Alaska App.1984) (common law in Alaska is dynamic, not static).

**14.** Other statements regarding this "duty" test have included an assessment as to the moral blame attributable to the defendant, the consequences to the defendant and the community of imposing a duty, and the availability of insurance to ultimately pay the loss. *Neakok,* 721 P.2d 1121, 1125 (Alaska 1986).

231 (Alaska 1987). This is the same test in general utilized in *J'Aire*, 598 P.2d at 60 and applied in *Ott*, 37 Cal.Rptr.2d at 797–98. It is clear that the Alaska Supreme Court uses it to explain results and not reach them. *Tyonek*, 680 P.2d at 1152–54. The fact that the respective Supreme Courts of Alaska and California apply the same test and regularly reach diametrically opposite decisions on whether to impose a duty confirms the limited value of the test as a predictor. Its value is purely as an apology for a decision reached on other grounds. In *Tyonek*, the court brushed the test aside and, in reliance on *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), found contract a better basis for determining liability than tort, at least in sales cases where only economic loss was suffered. *Tyonek*, 680 P.2d at 1154. Earlier, in *Wierzbicki v. Alaska Mutual Sav. Bank*, 630 P.2d 998 (Alaska 1981), the court acknowledged the test but declined to follow *Connor v. Great W. Sav. and Loan Ass'n*, 69 Cal.2d 850, 73 Cal.Rptr. 369, 447 P.2d 609 (1968). In *Transamerica Premier*, the court declined to follow *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 206 Cal. Rptr. 354, 686 P.2d 1158, 1167 (1984).

In summary, in the area of economic loss where courts have been squarely faced with the issue, they have consistently refused to find an extra contractual duty beyond the duty to refrain from deceit. Its reluctance to follow other California cases utilizing the test foreshadows rejection of *J'Aire*, 598 P.2d 60.

There are good reasons for preferring contract to tort in virtually all cases where only economic loss is suffered. First, allowing for overlapping remedies is confusing to the parties, their lawyers and the decision makers. Confusion increases the cost of litigation and delays the outcome. The Supreme Court has, therefore, recognized the need to make tort and contract mutually exclusive. This bright line rule avoids costly and time consuming litigation regarding the choice between contract and tort which actually serves a party's litigation strategy. Its professional negligence decisions have emphasized this point. In choosing between tort and contract, it is clear that each has some advantages. Contract permits the parties to deter-

mine for themselves what duties will be assumed and to whom and how risk will be distributed. These decisions establishing duties and distributing risk may be memorialized in the contract before a loss is suffered and thus serves the interest in uniformity, predictability and certainty in the law. Further, since the parties can control the distribution of risk, disagreements can usually be resolved rapidly and in a rational way. Even if the matter goes to court, a decision may be made in a reasonable time and at a reasonable cost.

In contrast, tort law serves the interest in flexibility; making fine distinctions between similar cases in order to reach an individualized result. Since tort obligations tend to be imposed by a jury long after injury is suffered and ultimately determined by an appellate court even later, the decision will be made after the dust settles and fairness can be determined in retrospect. On the one hand, certainty, predictability, expeditious resolution and low cost when the plaintiff is limited to contractual remedies is often purchased at the cost of flexibility and an occasional result that appellate judges and authors of law review articles may find emotionally unsatisfying. On the other hand, flexibility and the emotionally satisfying results where tort remedies are allowed are often purchased at the cost of delay, expense and unpredictability of results.

In sum, where contractual remedies exist, courts should hesitate to graft additional remedies in the absence of some good reason. It appears that courts sometimes find contractual remedies inadequate for two reasons. The belief that available tort remedies have a desirable deterrent impact on undesirable practices and second the concern that disparate bargaining position disfavor certain worthy litigants. Neither, however, justifies imposing a tort duty in this case.

The Alaska Supreme Court specifically addressed the deterrent impact of tort decisions under the economic loss rule in *Pratt & Whitney*, 852 P.2d at 1178–81, and relied exclusively on assumed deterrence in permitting a tort remedy for pure economic losses where a product failed under circumstances

impacting safety. The Alaska Supreme Court declined to expand tort beyond such cases in order to deter breaches of contract that did not impact safety but only resulted in a contracting party receiving less than she thought she had bargained for. The Alaska Supreme Court also considered the impact of disparate bargaining power and the power of the person in the superior bargaining position to shift risk by disclaiming warranties. *Id.* at 1179 & n. 8. The court specifically recognized that in the area of products liability the manufacturer can generally sell her products on a take it or leave it basis. While this led the court to invoke tort to trump bargaining advantage where safety was implicated, the court declined to do so when only economic loss was risked.

If the courts apply this analysis to real estate transactions, the need for tort remedy is even less pronounced. St. Denis contracted with the government to purchase distressed property and clearly was not in a position to dictate the terms of her purchase. If we look beyond her situation to the generality of real estate transactions, we find that her situation is unusual. The bulk of real estate transactions take place between private individuals in which price is generally determined by the market. In fact, either parties' ability to force conditions on the other is probably more a function of that market than the bargaining strength of either party. Therefore, if the Alaska Supreme Court is not willing to permit an extra contractual remedy in products liability where there is only economic loss, it will not adopt such a tort duty in real estate transactions under identical circumstances.

**IT IS THEREFORE ORDERED:**

The renewed motion for summary judgment at Docket No. 56 is **GRANTED.** The clerk is directed to enter judgment dismissing this action without prejudice to refiling in the court of claims.